# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| MICHAEL HAAS, | Case No. 5:25-cv-885 |
| Plaintiff, | Judge J. Philip Calabrese |
| v. | Magistrate Judge Jennifer Dowdell Armstrong |
| CITY OF AKRON, *et al.*, | |
| Defendants. | |

## OPINION AND ORDER

Plaintiff Michael Haas, a firefighter in the City of Akron, brings this action against the City of Akron and three individuals for alleged discriminatory promotion practices and retaliation within the City's fire department. He alleges that individual Defendants Leon Henderson, Joseph Natko, and Clarence Tucker, motivated by racial animus, conspired to deny him a promotion to District Chief of the Akron Fire Department. The individual Defendants move to dismiss certain claims against them under the intracorporate conspiracy doctrine. For the following reasons, the Court **GRANTS** the motion.

## STATEMENT OF FACTS

Taking the facts alleged in the complaint as true and construing them in Plaintiff's favor, as the Court must on the motion before it, Plaintiff bases his claims on the following events.

### A. The City of Akron Fire Department's Process for Promotions

Akron's process for promotions involves a ranking system that considers an applicant's "seniority, education, certifications, and experience" to determine the applicant's rank on the list for promotions. (ECF No. 1, ¶ 41, PageID #5.) Previously, Akron used the "Rule of Three" to select candidates for promotion within the fire department, which "required that for each vacant position, the three top-ranked candidates be considered for the vacancy." (*Id.*, ¶ 252, PageID #19.) As a result of litigation, however, the City of Akron was found to be "that unusual employer who discriminates against the majority," resulting in the Rule of Three being considered discriminatory. (*Id.*, ¶¶ 28–32, PageID #4; *id.*, ¶ 28, PageID #4 (citing *Howe v. City of Akron*, Case No. 5:6-cv-2779 (N.D. Ohio Nov. 26, 2008).) In that case, the court entered a permanent injunction, prohibiting Akron from following its previous hiring practices. (*Id.*, ¶ 31, PageID #4.)

Now, Akron uses the "Rule of Five" to select from prospective candidates on the list for promotions to make advancement decisions within the fire department. (*Id.*, ¶ 250, PageID #19.) The Rule is not "defined in the Akron policies or procedures manual" or "in the Charter of the City of Akron." (*Id.*, ¶¶ 258–59, PageID #20.) Instead, the Rule of Five was adopted through a union contract to displace Akron's previous "Rule of Three." (*Id.*, ¶¶ 251–57, PageID #19–20.) According to the fire department's collective bargaining agreement, all promotions must be based on the Rule of Five. (*Id.*, ¶ 260, PageID # 20.)

Under the Rule of Five, Akron's Mayor and the Fire Chief may select from one of the top five ranked candidates on the promotion list. (*Id.*, ¶ 262, PageID #20.)

Notwithstanding this discretion, the Rule of Five has only been used in two promotion cycles to skip over a higher-ranked candidate. (*Id.*, ¶ 269, PageID #21.) In these instances, the Rule of Five was used to pass over individual candidates who had "severe discipline history" or "problematic performance." (*Id.*, ¶ 272, PageID #21.)

B.  **Plaintiff Michael Haas**

Plaintiff Michael Haas is a white male who became a firefighter for the City of Akron, Ohio in July 1997. (*Id.*, ¶¶ 22–27, PageID #3–4.) From 2017 to 2024, Mr. Haas served as Akron's Captain of Fire Prevention and Fire Training and Safety Officer. (*Id.*, ¶ 33, PageID #5.) From 2021 to 2023, Mr. Haas also served as Provisional Chief in Fire Training and in Fire Prevention. (*Id.*, ¶ 37, PageID #5.) In 2024, at the age of 57, Mr. Haas participated in Akron's promotional process for consideration for a recently opened District Chief position. (*Id.*, ¶ 25, PageID #3; *id.*, ¶ 40, PageID #5.) In April 2024, Mr. Haas was ranked first of six potential candidates for the position. (*Id.*, ¶ 43, PageID #5.) Before this ranking, Mr. Haas had no disciplinary history. (*Id.*, ¶ 45, PageID #5.)

Sierjie Lash also entered Akron's promotional process for the open Fire District Chief position in 2024 and was ranked fifth out of the six potential candidates. (*Id.*, ¶ 46, PageID #5.) She is an African American woman, who was 49 years old at the time. (*Id.*, ¶¶ 48–49, PageID #5–6.) At the time of the ranking, Lash had a disciplinary history. (*Id.*, ¶ 50, PageID #6.) In 2023, Lash was investigated for nine months after coaching African American candidates for the fire department who admitted to drug use during the application process. (*Id.*, ¶¶ 51–54, PageID #6.) She allegedly showed these candidates how to refile their paperwork without making the

same disqualifying statements a second time. (*Id.*, ¶ 51, PageID #6.) On November 28, 2023, the investigation concluded, resulting in a 30-day unpaid suspension for her actions. (*Id.*, ¶ 83, PageID #8.)

In December 2023, Lash appealed her suspension. (*Id.*, ¶ 86, PageID #8.) Her hearing before Mayor Daniel Horrigan resulted in overturning of the suspension. (*Id.*, ¶ 93, PageID #9.) This reversal was based on a finding that "Lash's bad acts were a result of poor training Lash received." (*Id.*, ¶ 91, PageID #9.) After the hearing, Mayor Horrigan ordered Lash to attend remedial supervisory training, which she has not yet completed. (*Id.*, ¶ 92, PageID #9; *id.*, ¶ 142, PageID #12.)

### C. Conspiracy to Promote Lash

At some point between July and August 2024, acting Fire Chief Leon Henderson allegedly conspired with both Clarence Tucker and Jospeh Natko about "how to skip Haas and other qualified candidates in favor of Lash for promotion to District Chief." (*Id.*, ¶ 101, PageID #10.) Among other things, the alleged conspiracy appeared to be driven by the individual Defendant's discriminatory motives. (*Id.*, ¶¶ 111–17, PageID #10–11.) The complaint makes the following specific allegations about each individual Defendant's motives.

#### C.1. Leon Henderson

At all relevant times, Defendant Leon Henderson, an African American man, served as the acting Fire Chief for the City of Akron. (*Id.*, ¶¶ 56–57, PageID #6.) During this time, he exercised supervisory authority over Mr. Haas. (*Id.*, ¶ 58, PageID #6.)

4

In 2023, Mr. Henderson allegedly interfered with the investigation into the coaching allegations against Lash and retaliated against the whistleblower who initiated the investigation into Lash. (*Id.*, ¶¶ 59–60 & 66, PageID #6–7.) Specifically, Mr. Henderson "ordered the whistleblower to write a formal statement about . . . breaking the chain of command for reporting Lash's conduct to human resources." (*Id.*, ¶ 60, PageID #6.) Then, Mr. "Henderson ordered all future communications with human resources to be handled by Lash." (*Id.*, ¶ 62, PageID #7.) Despite requests from investigators, Mr. Henderson prohibited the use of polygraph machines to "ferret out the recruits who were coached to lie on their documents." (*Id.*, ¶¶ 64–65, PageID #7.)

### C.2. Clarence Tucker

From 2016 to 2022, Defendant Clarence Tucker served as the Chief of the Akron Fire Department. (*Id.*, ¶ 102, PageID #10.) He left this role in September 2022 when he was appointed as Akron's deputy mayor for public safety. (*Id.*) While working for the mayor's office, Mr. Tucker allegedly conferred with Mr. Henderson about how to promote Lash over Mr. Haas. (*Id.*, ¶¶ 101–03, PageID #10.) During this discussion, Mr. Tucker assured Henderson that he "had the backing of the Mayor's office to promote Lash over Haas." (*Id.*, ¶ 127, PageID #11.)

Mr. Henderson approached Mr. Tucker because he "had demonstrated a discriminatory bias towards Lash during his tenure as Chief." (*Id.*, ¶ 103, PageID #10.) During Mr. Tucker's time as Chief of the Akron Fire Department, Lash caused damage to a department vehicle. (*Id.*, ¶ 104, PageID #10.) But Mr. Tucker refused to punish her and prohibited Lash's direct supervisor from punishing her for

the damage to the vehicle. (*Id.*, ¶¶ 105 & 108, PageID #10.) However, when a white male firefighter caused damage to a department vehicle during Mr. Tucker's tenure, the firefighter was suspended for damaging the vehicle. (*Id.*, ¶¶ 106–07, PageID #10.)

### C.3.  Joeseph Natko

In February 2024, Defendant Joseph Natko was employed by the city of Akron as a firefighter. (*Id.*, ¶ 38, PageID #5.) During this time, Mr. Haas was serving as the Akron Fire Department Safety Officer. (*Id.*, ¶ 70, PageID #7.)

On or about February 8, 2024, Lt. Chris Bader complained to Mr. Haas about the status of a discrimination complaint that Lt. Bader had filed with Defendant Joseph Natko. (*Id.*) Lt. Bader was upset that Mr. Natko did not investigate his discrimination complaint. (*Id.*, ¶ 71, PageID #7.) Mr. Haas subsequently initiated his own investigation and found that Mr. Natko failed to report or investigate Lt. Bader's discrimination complaint in violation of standing Akron Fire policies. (*Id.*, ¶¶ 72–73, PageID #7.) When he learned this, Mr. Haas notified Dr. Faii, the Medical Director of Akron's Peer Support Team, that Mr. Natko did not follow the established protocols with respect to Lt. Bader's discrimination complaint. (*Id.*, ¶ 80, PageID #8.)

In March 2024, Mr. Natko retired from the Akron Fire Department. (*Id.*, ¶ 38, PageID #5.) After his retirement, Mr. Natko took a position with the Akron Mayor's office. (*Id.*, ¶ 39, PageID #5.) At some point between July and August 2025, Mr. Henderson allegedly conferred with Mr. Natko about "how to skip Haas and other qualified candidates in favor of Lash for promotion to District Chief." (*Id.*, ¶ 101, PageID #10.) During these discussions, Mr. Natko allegedly assured Mr. Henderson

6

"that he had the backing of the Mayor's office to promote Lash instead of Haas." (*Id.*, ¶ 118, PageID #11.)

### D. Retaliatory Actions Against Haas

Following the promotion of Lash to District Chief in August 2024, retaliatory actions were taken against Mr. Haas. (*Id.*, ¶ 190, PageID #15.) When he learned about Lash's promotion, Mr. Haas complained to Mr. Henderson that the promotion was discriminatory. (*Id.*, ¶ 161, PageID #13.) Mr. Henderson failed to document, investigate, and report this complaint to upper management or human resources, in violation of Akron's policies. (*Id.*, ¶¶ 165–87, PageID #13–15.) Mr. Haas claims that these failures were intentional, discriminatory, and retaliatory in nature. (*Id.*, ¶ 167, PageID #13; *id.*, ¶ 187, PageID #15; *id.*, ¶ 192, PageID #15.)

In August 2024, Mr. Henderson prepared a list of firefighters to be transferred within the department. (*Id.*, ¶ 195, PageID #16.) When he learned of the transfer list, Mr. Haas asked Mr. Henderson if he was on the list and was assured that he was not. (*Id.*, ¶ 197, PageID #16.) The next month in September 2024, Mr. Haas filed a charge of discrimination with the Equal Employment Opportunity Commission and sent a second complaint of discrimination to Mr. Henderson. (*Id.*, ¶¶ 206–07, PageID #16.) Later that same day, Mr. Henderson added Mr. Haas to the August 2024 transfer list. (*Id.*, ¶¶ 208, PageID #16.)

Mr. Haas was transferred to a "48-hour position on the line" which required him to work 24-hour shifts. (*Id.*, ¶ 213, PageID #17.) According to Mr. Haas, "[n]o other Captain . . . has been transferred to a 48-hour position without first either requesting it or as a result of discipline." (*Id.*, ¶ 214, PageID #17.) Mr. Haas contends

7

that his transfer and Mr. Henderson's failure to document, investigate, and report his second discrimination complaint were retaliatory and discriminatory in nature. (*Id.*, ¶ 219, PageID #17; *id.*, ¶ 240, PageID #18.)

The night of his transfer, Mr. Haas filed a retaliation complaint with the City of Akron. (*Id.*, ¶ 243, PageID #19.) On October 9, 2024, the City conducted a formal investigation into Mr. Haas's retaliation complaint. (*Id.*, ¶ 246, PageID #19.) The investigation concluded on December 6, 2024, and determined that Mr. Henderson's decision to transfer Mr. Haas was not retaliatory. (*Id.*, ¶¶ 274–75, PageID #22.)

In March 2025, another District Chief retired, and the position was left vacant. (*Id.*, ¶¶ 281–82, PageID #22.) The next month, Akron Firefighters Association Local 330 sent a grievance to Mr. Henderson because the vacant position had not yet been filled. (*Id.*, ¶ 283, PageID #22.) Local 330 urged Mr. Henderson to fill the position using the 2024 promotional list, which ranked Mr. Haas as the top candidate. (*Id.*, ¶¶ 284–86, PageID #22–23.) Mr. Henderson denied Local 330's grievance and refused to promote Mr. Haas to the open position. (*Id.*, ¶ 288, PageID #23.)

## STATEMENT OF THE CASE

On May 2, 2025, Mr. Haas filed this lawsuit against the City of Akron, Leon Henderson, Joseph Natko, and Clarence Tucker. (ECF No. 1.) With respect to the City of Akron, Mr. Haas's complaint alleges several violations of both federal and State discrimination laws. (*Id.*, PageID #23–31.) Regarding the individually named Defendants, the complaint alleges two violations of federal law: (1) a violation of 42 U.S.C. § 1985(3), conspiracy to deprive of equal protection; and (2) 42 U.S.C.

8

§ 1986, failure to prevent a civil rights violation. (*Id.*, PageID #31–32.) The individual Defendants move to dismiss the federal claims against them in their individual capacities as barred by the intracorporate conspiracy doctrine. (ECF No. 15.)

## ANALYSIS

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint" and is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To survive a motion to dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But

a pleading must offer more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, the Court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (cleaned up); *see also, e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth). A plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-Defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

**I.   Section 1985(3) Claim**

Plaintiff alleges that the individual Defendants—Mr. Henderson, Mr. Tucker, and Mr. Natko—conspired with one another to deprive him of his right to equal protection of the laws and that the conspiracy was motivated by "racial animus" and undertaken to deny Mr. Haas a promotion and professional advancement. (ECF No. 1, ¶¶ 404–09, PageID #31.) Specifically, Mr. Haas contends that the individual

Defendants, in furtherance of the conspiracy, "took overt acts including excluding [Mr.] Haas from consideration, bypassing him for advancement, and promoting a less qualified candidate." (*Id.*, ¶ 407, PageID #31.)  Therefore, Mr. Haas brings a federal conspiracy claim under Section 1985.  All individuals assert that the intracorporate conspiracy doctrine bars Mr. Haas's conspiracy claim because they are all part of the same entity.  (EC No. 15-1, PageID #83.)

### I.A  Intracorporate Conspiracy Doctrine

"It is basic in the law of conspiracy that you must have two persons or entities to have a conspiracy."  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 510 (6th Cir. 1991).  But under the intracorporate conspiracy doctrine, if "all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (quoting *Hull*, 926 F.2d at 510).  The Sixth Circuit "has adopted the general rule in civil conspiracy cases that a corporation cannot conspire with its own agents or employees."  *Hull*, 926 F.2d at 510.

The Sixth Circuit holds that the intracorporate conspiracy doctrine applies in the context of civil rights conspiracies under Section 1985(3).  *Id.* at 509; *see Johnson*, 40 F.3d at 839–40 (applying the intracorporate conspiracy doctrine to Section 1985(3) claims).  The Sixth Circuit has extended the doctrine to apply to local governmental bodies and municipalities.  *Jackson v. City of Cleveland,* 925 F.3d 793, 817–19 (6th Cir. 2019).

Here, the individual Defendants were all part of a single entity:  the City of Akron, a municipal corporation within the State of Ohio.  The complaint alleges that

11

during all material times the individual Defendants were employees of the City of Akron. (ECF No. 1, ¶¶ 2–8, PageID #2.)

### I.B. Plaintiff's Argument

Plaintiff attempts to refute the applicability of the of the intracorporate conspiracy doctrine by advancing two arguments. First, he characterizes Mr. Henderson, Mr. Tucker, and Mr. Natko as occupying "distinct roles in different departments." (ECF No. 18, PageID #35.) But this distinction is immaterial under the law. Under the law of this Circuit, intracorporate conspiracy doctrine applies where individuals were employed in different departments. *Hull*, 926 F.2d at 510 (holding that a school's superintendent, executive director, and administrator could not conspire because they were all "employees or agents of the [school] Board"); *Upton v. City of Royal Oak*, 492 F. App'x 492, 493 n.1 (6th Cir. 2012) (holding that the intracorporate conspiracy doctrine prevented a firefighter from bringing Section 1985(3) action against the mayor, city manager, assistant city attorney, and director of human resources). What matters is that the individual Defendants are "members of the same collective entity." *Hull*, 926 F.2d at 510. Such is the case here, and each participated in the promotional process about which Plaintiff complains as employees or agents of the City of Akron.

Second, Plaintiff argues that the intracorporate conspiracy doctrine does not apply because the individual Defendants acted beyond the scope of their employment. (ECF No. 18, PageID #138–39.) However, the complaint alleges that the individual Defendants were "acting under color of state law, and within scope of [their] employment" at all relevant times. (ECF No. 1, ¶¶ 4, 6 & 8, PageID #2.) The

complaint states no other facts and makes no allegations that the individual Defendants were acting outside the scope of their employment. Therefore, this argument fails based on the facts alleged.

For these reasons, the intracorporate conspiracy doctrine bars Mr. Hass's civil conspiracy claim under Section 1985(3) against the individual Defendants.

## II. Section 1986 Claim

The Sixth Circuit has made clear that a plaintiff's failure to state a claim for relief under Section 1985 is "fatal to his claims brought pursuant to § 1986 because a § 1986 claim is dependent upon a viable § 1985 claim." *Amadasu v. The Christ Hosp.*, 514 F.3d 504, 507 (6th Cir. 2008); *see Bartell v. Lohiser,* 215 F.3d 550, 560 (6th Cir. 2000); *Haverstick Enters., Inc. v. Fin. Fed. Credit, Inc.,* 32 F.3d 989, 994 (6th Cir. 1994). Because Plaintiffs fails to state a claim against the individual Defendants under Section 1985, the related Section 1986 claims fail as a matter of law.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the individual Defendants' motion to dismiss (ECF No. 15) and **DISMISSES** Counts X and XI.

**SO ORDERED.**

Dated: December 29, 2025

J. Philip Calabrese
United States District Judge
Northern District of Ohio

13